UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OCA, Inc., et al.                    CIVIL ACTION

                                            NO: 06-3811

                                            SECTION: R(3)


**ORDER AND REASONS**

This matter comes before the Court on motion to withdraw the reference filed by the doctor in the above-referenced case. Having considered the record, the memoranda of counsel and the applicable law, the Court DENIES the motion to withdraw the reference to the bankruptcy court.

I.  **BACKGROUND**

   A.  **Factual Background**

   Orthodontic Centers of America (OCA) was formed to provide business services to orthodontic and dental practices.  OCA entered into long-term Business Service Agreement (BSA) contracts with about 250 practices nationwide.  Nearly all of OCA's revenue is derived from the BSAs, and it is not disputed that the BSAs, taken as a whole, are the debtor's primary asset.  Under the BSAs, the practices pay OCA a monthly service fee based upon a percentage of the practices' operating profit or practice revenue.

   According to OCA, some practices began to default under the BSAs in late 2004.  The resulting litigation increased dramatically through early 2006 as more practices defaulted under the BSAs.  OCA asserts that, as a result of the coincident loss of revenue, OCA and all of its subsidiaries filed for Chapter 11 protection on March 14, 2006.  OCA argues that the practices did not seek any judicial determination that they were relieved of their obligations under the BSAs, but rather stopped performance under a unilateral determination that OCA was in breach.  OCA further claims that the practices continued to use OCA's intellectual and other property after the practices stopped performing under the BSAs.

The dentists and orthodontists ("doctors") assert that the disputes between OCA and the doctors did not start in 2004, but began in 1999 with OCA's failure to perform under the BSAs. The doctors were unable to share information they learned in individual contract disputes against OCA because of the requirement that discovery be kept confidential. In 2004, OCA lost a case over its practice of secretly marking up the overhead charged to its clients by 10%. As a result of this outcome, OCA stopped marking up its overhead, which negatively affected its profitability.

The doctors assert that OCA defaulted under the BSAs by failing to pay practice expenses out of practice revenues in a timely manner. They argue that, since OCA was to use practice revenues, not its own revenue, to pay the expenses, its own financial troubles should not have affected its ability to perform under the BSAs. The doctors gave OCA written notice of default and time to cure. According to the doctors, OCA responded with silence or letters denying any default. Upon notice of default, OCA terminated the doctors' staffs and shut off access to patient scheduling and billing records.

The dispute over the BSAs has led to an unknown number of contract suits between individual doctors and OCA. Some of the cases were initiated by OCA, while others were initiated by the

individual doctors.  In many of the cases, either OCA or the individual doctors made jury trial demands.  On June 5, the first group of doctors moved to withdraw the reference from the bankruptcy court in their individual contract cases.  In total, the Court has received 28 motions to withdraw the reference from doctors involved in contract disputes with OCA that include jury demands.

On August 1, 2006, Bankruptcy Court Judge Jerry Brown issued a case management order in which he postponed the adjudication of the individual contract disputes until March 2007, after completion of a plan confirmation proceeding in the Bankruptcy Court.  At that time, the Bankruptcy Court would decide which BSAs were executory, and whether the debtor could assume those contracts.  Even if the Bankruptcy Court confirmed a plan in September, the ultimate viability of the debtor would still depend in part on the outcome of the BSA litigation in March. Judge Brown also set a discovery schedule and a trial date for the BSA litigation.  Further, Judge Brown approved a Disclosure Statement and scheduled a confirmation to begin on September 5, 2006.

On August 30, 2006, this Court held oral argument on the pending motions to withdraw the reference.

## II.  DISCUSSION

The standard for when a district court may withdraw the reference from a bankruptcy court is outlined in 28 U.S.C. § 157(d).  Section 157 provides for both mandatory and permissive withdrawal:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.  The district court shall, on timely motion of any party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

### A.  Mandatory Withdrawal

Courts generally interpret the mandatory withdrawal provision restrictively, granting withdrawal of the reference when the claim and defense entail material and substantial consideration of non-Bankruptcy Code federal law.  *See, e.g., Lifemark Hosps. of La., Inc. v. Liljeberg Enters., Inc.*, 161 B.R. 21, 24 (E.D. La. 1993) (withdrawing reference when case

5

necessarily involved a determination of antitrust claims); *U.S. Gypsum Co. v. Nat'l Gypsum Co.,* 145 B.R. 539, 541 (N.D. Tex. 1992) (withdrawing reference when case necessarily involved a determination of patent claims); *In re Johns-Manville Corp.*, 63 B.R. 600, 603 (S.D.N.Y. 1986) (withdrawing reference when case necessarily involved a determination of CERCLA issues); *In re White Motor Corp.*, 42 B.R. 693, 704 (N.D. Ohio 1984) (no withdrawal of reference based on speculation about issues under ERISA and Internal Revenue Code which may or may not be germane to the core proceeding).  The doctors do not seek mandatory withdrawal of the reference.  Consequently, the Court will consider whether permissive withdrawal is appropriate under 28 U.S.C. § 157 (d) "for cause shown."

### B.  Permissive Withdrawal

The Fifth Circuit has held that in determining whether to withdraw the reference for cause shown, district courts should consider whether the matter at issue is a core or a non-core proceeding.  *See Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985).  Additionally, courts should consider whether the proceedings involve a jury demand and whether withdrawal would further the goals of promoting uniformity in bankruptcy administration, reducing forum shopping

6

and confusion, fostering the economical use of the debtor's and creditors' resources, and expediting the bankruptcy process. *Id.* The factors to consider are thus

1.  Is the matter core or non-core?

2.  Do the proceedings involve a jury demand?

3.  Would withdrawal further uniformity in bankruptcy administration?

4.  Would withdrawal reduce forum-shopping and confusion?

5.  Would withdrawal foster economical use of resources?

6.  Would withdrawal expedite the bankruptcy process?

*Id.*

### Nature of the Proceedings

If a matter is a non-core proceeding, the bankruptcy court may issue final orders and judgments on it only with consent of the parties. *Michaelesco v. Shefts*, 303 B.R. 249, 252 (D. Conn. 2004). The bankruptcy court is authorized to make findings of facts and law in the non-core matters, but these determinations will be subject to *de novo* review by the district court. *In re United States Lines, Inc.,* 197 F.3d 631, 636 (2d Cir. 1999). In this sense, the bankruptcy court acts like a magistrate's court with respect to proceedings that are related but non-core. It may, however, still serve judicial economy for the bankruptcy

7

court to hear non-core proceedings if the non-core proceedings call upon the special knowledge of the bankruptcy court.

The doctors argue that their claims are non-core proceedings.  In support, they offer *In re Wood*, 824 F.2d 90, 95 (5th Cir. 1987).  In *Wood*, the Fifth Circuit considered whether a single state contract claim could constitute a core proceeding, and held that

> Bankruptcy judges may exercise full judicial power over only those controversies that implicate the peculiar rights and powers of bankruptcy . . . controversies that do not depend on the bankruptcy laws for their existence – suits that could proceed in another court even in the absence of bankruptcy – are not core proceedings.

*Id.* at 96.  In that case, any connection between an ordinary state contract claim and the bankruptcy proceedings was speculative.  *Id.* at 98.  Such a connection would arise only after the issuance of a judgment and the initiation of proceedings to allow that claim or discharge that debt.  *Id.* Because the claims in this case are for breach of contract, breach of fiduciary duty and declaratory relief, and are entirely based on state law, the doctors argue that they do not support a finding of core status.  *Id.* at 97.

The debtor argues that the proceedings are core proceedings. In support of this contention, it submits *In re United States Lines, Inc.*, 197 F.3d at 638, in which the Second Circuit found

8

that "the impact [the contracts at issue had] on other core bankruptcy functions . . . render[ed] the proceedings core." *Id.* In that case, it was not merely that the contracts involved the property of the estate that rendered the matters core, but the scope of the involvement. *Id.* If the claims "may well be . . . the most important asset of the debtor's estate," then they represent core proceedings properly before the bankruptcy court. *Id.* (citations omitted) (internal punctuation omitted). OCA argues that reorganization would be impossible without important determinations by the Bankruptcy Court, including whether to assume the BSAs. Thus, they argue, the contract proceedings are necessarily core because they go to the heart of the bankruptcy.

There is no doubt that the universe of BSAs represents the principal asset of the bankrupt estate. Nevertheless, the facts of this case are closer to those of *Wood* than *United States Lines*. Under *United States Lines*, withdrawing the reference would have gutted the bankruptcy proceedings by depriving that court of jurisdiction over the principal asset of the debtor's estate. In this case, the bankruptcy court was willing to defer hearing the cases that are the subject of motions to withdraw until March 2007 and proceed to consider plan confirmation. The debtor's proposed plan was based on a reorganized entity operating with 168, not 250, BSAs. This suggests that there were

sufficient assets in the debtor to form the basis of a proposed reorganization plan, notwithstanding the contested BSAs.  This factor distinguishes this case from the "principal asset" scenario found in *United States Lines*, although whether these disputed BSAs can be assumed clearly will affect the viability of a reorganized debtor.

On the other hand, the Bankruptcy Court does have jurisdiction over an important aspect of the BSA dispute, and the contract claims do have an impact on the Bankruptcy Court's exercise of a core function.  Under 11 U.S.C. § 365(a), the trustee may assume or reject any executory contract on behalf of the debtor, with the approval of the Bankruptcy Court.  This *requires* the Bankruptcy Court to exercise jurisdiction over the contracts in order to determine whether they are in fact executory and then to determine whether assumption is proper. Because this is a substantive right under Chapter 11, resolving whether the contracts are executory and whether they can be assumed is a core function of the Bankruptcy Court.  *See generally Wood*, 825 F.2d at 95.  In such cases, the Bankruptcy Court has jurisdiction to determine the existence of executory contracts and any obligation to cure.  *Id.*  Further, the discovery germane to this issue and to the contract actions substantially overlaps.  The Bankruptcy Court will bring these

assumption issues to a head in March or April of 2007, which is much faster than a federal district court could conduct 28 individual jury trials, assuming jury trials are available.  In the meantime, some of these proceedings could be resolved by the Bankruptcy Court on legal issues or on undisputed facts that, even if non-core, this Court can review *de novo*.  The Court therefore finds that, regardless of whether these contract disputes in isolation could be considered non-core, at this stage of the proceeding, it is premature to find that this factor favors withdrawal of the reference.

### *Jury Demand*

In all of the cases addressed by the present motions to withdraw the reference, either OCA or the initiating doctors made jury demands.  The doctors assert that the inability of the bankruptcy court to hold a jury trial is grounds for a district court to withdraw the reference form the bankruptcy court.  The doctors further argue that, because the claims are non-core proceedings, and a jury demand has been made, there should be a withdrawal of the reference.  *Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 115 (N.D. Tex. 2006).  OCA argues that at least some of the orthodontists waived their Seventh Amendment right to a jury trial by filing formal or informal proofs of claim against

11

OCA with the bankruptcy court.  Without question, any doctor filing a formal proof of claim in the Bankruptcy Court has consented to the jurisdiction of the Bankruptcy Court and that motion to withdraw the reference must be denied.

A number of courts have held that even if a party does have a right to a jury trial, a motion to withdraw is premature until such time it is determined that a jury trial must be conducted. *See Centex v. Landis*, 1996 WL 476585 (E.D. La. 1996).  Until that time, it may better serve judicial economy (under the *Holland America* factors) for the bankruptcy court to resolve pre-trial matters.  *See, e.g., Michaelesco,* 303 B.R. at 252 (stating that "[i]f a case is non-core and a jury demand has been filed, a district court *might* find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference.") (citations omitted) (emphasis added); *In re Enron Corp.*, 295 B.R. 21, 27 (Bkrtcy. S.D.N.Y. 2003) ("The case law is clear that 'a district court is not compelled to withdraw a reference simply because a party is entitled to a jury trial.").  Under the circumstances, the Court need not decide whether a jury trial is proper, but may deny the motion to withdraw the reference until such time as it becomes clear that a jury trial, if available, is necessary.  *See Centex* 1996 WL 476585 at *1.

12

Here, the existence of a jury demand does not mandate immediate withdrawal of the reference.  As discussed *supra*, the Bankruptcy Court has statutory jurisdiction over the assumption or rejection of executory contracts.  The Bankruptcy Court has issued a scheduling order for discovery.  An unknown number of doctors involved in the BSA litigation have consented to the jurisdiction of the Bankruptcy Court.  There is no reason why the Bankruptcy Court cannot supervise all of the BSA litigation throughout the pretrial stages.  This Court may then withdraw the reference once a jury trial, if available, is necessary.

### *Judicial Economy*

The interests of uniformity, reducing forum-shopping, conserving resources, and expeditious resolution support denying the motion to withdraw the reference.  The Bankruptcy Court will supervise all of the BSAs that are not the subject of the motions to withdraw, and any for which the motion to withdraw is denied. In order to promote uniformity and prevent forum-shopping, it is logical that the Bankruptcy Court would conduct pretrial proceedings in all of the contested BSA litigation.  Further, this would prevent needless expenditure of resources on parallel proceedings in courts across the country.  As noted earlier, as to any matters that can be resolved on legal issues or on

13

undisputed facts in cases in which a jury trial may be necessary, the Bankruptcy Judge can submit a report and recommendation to this Court, which will be reviewed *de novo*.  Indeed, as the Fifth Circuit notes in *Holland America*, the law permits "bankruptcy courts to hear 'core' proceedings by blanket reference from the district courts, while authorizing them to function much like magistrates as adjuncts to the district court on matters that are merely 'related to' a bankruptcy."  *Holland America*, 777 F.2d at 999.  Under the circumstances, maintaining the current arrangement is preferable to conducting duplicative pretrial proceedings.  Accordingly, consideration of the remaining *Holland America* factors favors denial of the motion to withdraw the reference.

Consideration of all of the *Holland America* factors does not favor withdrawal of the reference at this time.  In so finding, the Court takes no position on the availability of jury trials to individual litigants.  Should it later be clear that any of the BSA disputes requires a jury trial, the parties may renew their motions to withdraw the reference.

## IV.  CONCLUSION

For the foregoing reasons, IT IS ORDERED that the motions to withdraw the reference to the bankruptcy court are DENIED.


New Orleans, Louisiana, this <u>19th</u> day of September 2006.


<u>                                    </u>
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

15