UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OCA, Inc., et al.                    CIVIL ACTION

NO: 06-3811

SECTION: R(3)

## ORDER AND REASONS

This matter comes before the Court on the motion to withdraw the reference filed in the above-referenced case.  Having considered the record, the memoranda of counsel and the applicable law, the Court DENIES the motion to withdraw the reference to the bankruptcy court.

## I.  BACKGROUND

### A.  Factual Background

Orthodontic Centers of America (OCA) was formed to provide business services to orthodontic and dental practices.  OCA entered into long-term Business Service Agreement (BSA) contracts with about 250 practices nationwide.  Nearly all of OCA's revenue

is derived from the BSAs, and it is not disputed that the BSAs, taken as a whole, are the debtor's primary asset.  Under the BSAs, the practices pay OCA a monthly service fee based upon a percentage of the practices' operating profit or practice revenue.

According to OCA, some practices began to default under the BSAs in late 2004.  The resulting litigation increased dramatically through early 2006 as more practices defaulted under the BSAs.  OCA asserts that, as a result of the coincident loss of revenue, OCA and all of its subsidiaries filed for Chapter 11 protection on March 14, 2006.  OCA argues that the practices did not seek any judicial determination that they were relieved of their obligations under the BSAs, but rather stopped performance under a unilateral determination that OCA was in breach.  OCA further claims that the practices continued to use OCA's intellectual and other property after the practices stopped performing under the BSAs.

The dentists and orthodontists ("doctors") assert that the disputes between OCA and the doctors did not start in 2004, but began in 1999 with OCA's failure to perform under the BSAs.  The doctors were unable to share information they learned in individual contract disputes against OCA because of the requirement that discovery be kept confidential.  In 2004, OCA

2

lost a case over its practice of secretly marking up the overhead charged to its clients by 10%. As a result of this outcome, OCA stopped marking up its overhead, which negatively affected its profitability.

The doctors assert that OCA defaulted under the BSAs by failing to pay practice expenses out of practice revenues in a timely manner. They argue that, since OCA was to use practice revenues, not its own revenue, to pay the expenses, its own financial troubles should not have affected its ability to perform under the BSAs. The doctors gave OCA written notice of default and time to cure. According to the doctors, OCA responded with silence or letters denying any default. Upon notice of default, OCA terminated the doctors' staffs and shut off access to patient scheduling and billing records.

The dispute over the BSAs has led to a number of contract suits between individual doctors and OCA. Some of the cases were initiated by OCA, while others were initiated by the individual doctors. In many of the cases, either OCA or the individual doctors made jury trial demands.

In June 2006, Dr. Jennifer Meader filed a complaint in the bankruptcy court against OCA for breach of contract and breach of fiduciary duty and sought a declaratory judgment that her BSA with OCA is invalid under Washington law. (R. Doc. 1-6.) She

3

also filed a motion to withdraw the reference of this case to the
bankruptcy court, claiming that doing so would vindicate her
right to a jury trial and efficiently resolve her claims.  On
September 19, 2006, the Court denied her motion, and similar
requests of several other doctors, to withdraw the reference,
reasoning that doing so would be premature at best.  (R. Doc.
13).  Dr. Meader now renews her motion to withdraw the reference.

## II.  DISCUSSION

The standard for when a district court may withdraw the
reference from a bankruptcy court is outlined in 28 U.S.C. §
157(d).  Section 157 provides for both mandatory and permissive
withdrawal:

> The district court may withdraw, in whole or in part,
> any case or proceeding referred under this section,
> on its own motion or on timely motion of any party,
> for cause shown.  The district court shall, on timely
> motion of any party, so withdraw a proceeding if the
> court determines that resolution of the proceeding
> requires consideration of both title 11 and other
> laws of the United States regulating organizations or
> activities affecting interstate commerce.

28 U.S.C. § 157(d).

### A.  Mandatory Withdrawal

Courts generally interpret the mandatory withdrawal
provision restrictively, granting withdrawal of the reference

4

when the claim and defense entail material and substantial
consideration of non-Bankruptcy Code federal law.  *See, e.g.,*
*Lifemark Hosps. of La., Inc. v. Liljeberg Enters., Inc.*, 161 B.R.
21, 24 (E.D. La. 1993) (withdrawing reference when case
necessarily involved a determination of antitrust claims); *U.S.*
*Gypsum Co. v. Nat'l Gypsum Co.,* 145 B.R. 539, 541 (N.D. Tex.
1992) (withdrawing reference when case necessarily involved a
determination of patent claims); *In re Johns-Manville Corp.*, 63
B.R. 600, 603 (S.D.N.Y. 1986) (withdrawing reference when case
necessarily involved a determination of CERCLA issues); *In re*
*White Motor Corp.*, 42 B.R. 693, 704 (N.D. Ohio 1984) (no
withdrawal of reference based on speculation about issues under
ERISA and Internal Revenue Code which may or may not be germane
to the core proceeding).  Dr. Meader does not seek mandatory
withdrawal of the reference.  Consequently, the Court will
consider whether permissive withdrawal is appropriate under 28
U.S.C. § 157 (d) "for cause shown."

### B.  Permissive Withdrawal

In *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d
992, 999 (5th Cir. 1985), the Fifth Circuit established the list
of factors that a court should consider in determining whether to
withdraw the reference for cause shown.  The factors to consider

are listed as follows:

1.   Is the matter core or noncore?

2.   Do the proceedings involve a jury demand?

3.   Would withdrawal further uniformity in bankruptcy administration?

4.   Would withdrawal reduce forum-shopping and confusion?

5.   Would withdrawal foster economical use of resources?

6.   Would withdrawal expedite the bankruptcy process?

*Id.*

### *Nature of the Proceedings*

If a matter is a noncore proceeding, the bankruptcy court may generally issue final orders and judgments on it only with consent of the parties. *Michaelesco v. Shefts*, 303 B.R. 249, 252 (D. Conn. 2004).  Ordinarily, the bankruptcy court is authorized to make findings of fact and conclusions of law in noncore matters, but these determinations will be subject to *de novo* review by the district court. *In re United States Lines, Inc.,* 197 F.3d 631, 636 (2d Cir. 1999).  In this sense, the bankruptcy court acts like a magistrate's court with respect to proceedings that are related but non-core.  Dr. Meader, however, filed a proof of claim in the bankruptcy court before filing an adversary proceeding in the bankruptcy court.  (Claim No. 170.)  By filing

a proof of claim, Dr. Meader submitted to the equitable jurisdiction of the bankruptcy court.  *See, e.g., In re Hooker Investments, Inc.*, 937 F.2d 833, 838-39 (2d Cir. 1991); *Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990).  Her submission to the bankruptcy court's jurisdiction eliminates concerns generated by the limits on the bankruptcy court's power to finally dispose of noncore matters.  Accordingly, the Court finds that consideration of this factor favors denial of the motion to withdraw the reference.

### Jury Demand

As discussed, *supra*, by filing a proof of claim, Dr. Meader submitted to the equitable jurisdiction of the bankruptcy court. She is therefore not entitled to a jury trial.  *Langenkamp*, 498 U.S. at 44-45.   Accordingly, the Court finds that consideration of this factor favors denial of the motion to withdraw the reference.

### Judicial Economy

The Court previously discussed these factors in its September 18, 2006 opinion.  (R. Doc. 13 at pp. 13-14.)  In that opinion, the Court determined that the interests of uniformity, reducing forum-shopping, conserving resources, and expeditious

7

resolution supported denying the motion to withdraw the reference.  Now that the bankruptcy court has conducted the necessary pretrial proceedings, there is no danger of duplicative proceedings.  Moreover, the bankruptcy court has supervised the pretrial proceedings and has developed considerable familiarity with the subject matter of the case.  The remainder of the BSA litigation is also currently before the bankruptcy court while the parties attempt to resolve the outstanding issues through mediation.  The Court therefore finds that the interests of judicial economy support denial of the motion to withdraw the reference.

Consideration of all of the *Holland America* factors weighs against withdrawal of the reference in this case.  Dr. Meader submitted to the equitable jurisdiction of the bankruptcy court and is not entitled to a jury trial.  In addition, the interests of uniformity, reducing forum-shopping, conserving resources, and expeditious resolution all support denying the motion to withdraw the reference.

**IV.  CONCLUSION**

For the foregoing reasons, IT IS ORDERED that the motion to withdraw the reference to the bankruptcy court is DENIED.

New Orleans, Louisiana, this 13th day of June 2007.

_____
              SARAH S. VANCE
      UNITED STATES DISTRICT JUDGE